Foy v. SMA Ins.                    CV-95-97-SD    03/27/97   P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


James M. Foy

     v.                                    Civil No. 95-97-SD

S.M.A. Insurance Agency, Inc.;
Jonathan Robinson, Receiver;
Jonathan Robinson, individually


O R D E R


In this civil action, plaintiff James M. Foy seeks declaratory and monetary relief against defendants S.M.A. Insurance Agency, Inc. (SMA), and Jonathan Robinson individually and in his capacity as receiver for SMA.  The second amended complaint contains a claim for declaratory relief pursuant to 28 U.S.C. § 2201 (1994), a request for injunctive relief, and various state law claims for damages, including negligence and breach of fiduciary obligations.

Before the court is a new avalanche of motions filed by sundry parties, including (1) defendant Robinson's Motion for Judgment on the Pleadings (document 73); (2) defendants' Motion for Summary Judgment (document 74), Motion to File Reply Memorandum (document 77), and Motion for Dismissal Based on Abstention (document 80); (3) Motion of Craig O. Linscott to

Quash or Modify Subpoena . . . (document 71); (4) Linscott's Motion to Intervene (document 54) and Request to File Reply Memorandum (document 66); (5) defendants' Motion to Amend Answer (document 65); (6) various motions for admission of counsel pro hac vice (documents 57, 58, 59, 61); and (7) defendants' Assented-to Motion on Disclosure of Experts and Expert Reports (document 82). Plaintiff objects to all of these motions, except the last.

<u>Background</u>

Plaintiff Foy is a resident of New Hampshire and was at one time sole shareholder of defendant SMA, a Maine corporation.

In January of 1989, one Craig Linscott, then the manager of SMA, filed an action against Foy and SMA in York County (Maine) Superior Court (Civ. No. 90-67) based on Foy's alleged breach of a previous settlement agreement involving a transfer of 50 percent of SMA's stock to Linscott. <u>See</u> Exhibit C to Defendants' Motion for Summary Judgment. In July of 1992, that court appointed defendant Robinson as interim receiver of SMA, setting forth his duties to include, inter alia, management of SMA's business affairs.

Following a jury-waived trial, the York County Superior Court entered judgment in Linscott's favor on February 25, 1994,

2

and found that the defendant (Foy) had not complied with the terms of the settlement agreement requiring him to supply the necessary documentation to close the deal. The court ordered that Foy comply with the agreement. This decision was affirmed by the Maine Supreme Judicial Court on February 13, 1995.

SMA has elected subchapter S status under the Internal Revenue Code, making it a pass-through entity for federal income taxation purposes. Foy claims that while Robinson was receiver, SMA issued reports for federal income tax purposes which erroneously represented that Foy, as 100 percent shareholder of SMA, received an aggregate income exceeding $730,000 for the tax years 1992 through 1994. Although having described these funds as income to Foy, SMA refuses, "without excuse or explanation, to release these funds to Foy, despite his demand for their release." Second Amended Complaint ¶ 14. Foy also asserts that some of the withheld funds are located in New Hampshire. Specifically, Foy alleges that SMA maintained bank accounts in Somersworth, New Hampshire, and that approximately $500,000 of the money reported to be Foy's was held there. However, when Robinson learned of the instant action, he transferred the bulk of the funds out of New Hampshire. See id. ¶ 16.

On June 14, 1995, the York County Superior Court (Perkins, J.) ordered that SMA be dissolved and that Robinson, in his

3

capacity as receiver, transfer all of SMA's assets and liabilities, except for the corporation's taxes, to a corporation owned by Linscott.  See id. ¶ 17.  Nonetheless, SMA and Robinson have still failed to amend the tax reports to state that the income was Linscott's, and not Foy's.  See id. ¶ 18.

In the June order, the York County Superior Court stated that the receiver should file a report of sale and that a hearing on the report would be set by the court for approval, "at which time any outstanding related claims may be submitted and determined."  See Linscott v. Foy, No. 90-67, slip op. at 3 (York County Superior Court June 14, 1995) (attached to defendants' motion to dismiss).

Foy asks this federal court to declare either that the funds are in fact his or that the information returns are in error; he also seeks an order directing correction of the tax forms.  Other counts in the complaint allege that Robinson, both individually and in his capacity as receiver, was negligent and that he breached his fiduciary duty in his capacity as receiver.

Discussion

1.  Defendant Robinson's Motion for Judgment on the Pleadings

a.  Judgment on the Pleadings Standard

Under Rule 12(c), Fed. R. Civ. P., "[a]fter the pleadings

4

are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  "The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion."  Metromedia Steakhouses Co., L.P. v. Resco Management, 168 B.R. 483, 485 (D.N.H. 1994) (citation omitted).  "In reviewing the defendants' motion for judgment on the pleadings . . . the court must accept all of the factual averments contained in the complaint as true and draw every reasonable inference helpful to the plaintiff's cause."  Sinclair v. Brill, 815 F. Supp. 44, 46 (D.N.H. 1993) (citing Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991)); see also Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("because rendition of judgment in such an abrupt fashion represents an extremely early assessment of the merits of the case, the trial court must accept all of the nonmovant's well-pleaded factual averments as true and draw all reasonable inferences in his favor") (citations omitted).

Even then, judgment may not be entered on the pleadings "'"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."'"  Rivera-Gomez, supra, 843 F.2d at 635 (quoting George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete

5

<u>Mix Corp.</u>, 554 F.2d 551, 553 (2d Cir. 1977) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957))).


    <u>b. The Merits</u>

    Defendant Robinson moves for judgment on the pleadings as to all claims against him in his personal capacity--as distinguished from his capacity as a receiver. The court has already had occasion to outline the law relative to actions maintained against receivers in their personal capacities. <u>See</u> Order of Oct. 1, 1996, at 10-11.[1] To summarize, a receiver is not personally liable for actions performed in his capacity as receiver unless his actions were outside the scope of his authority as receiver. <u>See, e.g.</u>, <u>Capitol Indem. Corp. v. Curiale</u>, 871 F. Supp. 205, 209 (S.D.N.Y. 1994); <u>Federal Home Loan Mortgage Corp. v. Tsinos</u>, 854 F. Supp. 113, 116 (E.D.N.Y. 1994). Instead, all actions against a receiver are generally against the funds in the receivership.

    Plaintiff argues that the factual allegations against Robinson in his personal capacity, when viewed as true, support that Robinson acted outside the scope of the authority delegated to him by the York County (Maine) Superior Court. Robinson

---

[1]The court's previous order concerned, inter alia, the assertion of personal jurisdiction.

allegedly "failed, refused, or neglected" to correct the Schedule K-1 forms at issue here "to conform them to Judge Perkins' decision," such decision being an order that defendant SMA be dissolved and that Robinson, in his capacity as SMA's receiver, transfer all of SMA's assets and liabilities, except for taxes, to a corporation owned by Linscott, and take all additional action necessary to conclude SMA's affairs, including tax matters.  See Second Amended Complaint ¶¶ 17-19.  In addition, plaintiff points to the allegation in the complaint that Robinson acted personally and outside his role as receiver.  See id. at ¶ 72.

The court finds that the sort of negligent dereliction of duty alleged by plaintiff is not conduct so clearly outside the scope of Robinson's authority as receiver to make him personally liable.  There is no factual allegation to support that Robinson was acting in any other capacity than an official capacity at the relevant time, nor is there any allegation that Robinson acted in order to profit personally or that he acted in bad faith. Furthermore, plaintiff's argument is not saved by his conclusory allegation that Robinson acted "personally".  Accordingly, the court grants defendant Robinson's motion for judgment on the pleadings as to all claims alleged against him in his personal or individual capacity.

7

2. Abstention

    The court previously has permitted the parties, at their option, to submit supplemental briefs on the issue of whether the court should abstain from the exercise of jurisdiction over the case on the basis of Younger v. Harris, 401 U.S. 37 (1971), and its progeny. Defendant then filed a motion to dismiss based on abstention principles, and plaintiff filed a corresponding objection.

    This court, as a federal court, has a "strict duty" to exercise jurisdiction over an action, when such jurisdiction is conferred by Congress. Quackenbush v. Allstate Ins. Co., ___ U.S. ___, 116 S. Ct. 1712, 1720 (1996) (citing, inter alia, Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 821 (1976)). Only under certain exceptional circumstances--where abstention would serve an important countervailing interest such as "'regard for federal-state relations'" or "'wise judicial administration,'" id. (quoting Colorado River, supra, 424 U.S. at 817)--can the court decide to abstain from exercising jurisdiction.

    As recently noted by the First Circuit, Younger abstention principles require a federal court to abstain from reaching the merits of a case over which it has jurisdiction when there is

        (1) an ongoing state judicial proceeding,
        instituted prior to the federal proceeding (or,

> at least, instituted prior to any substantial progress in the federal proceeding), that (2) implicates an important state interest, and (3) provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit.

Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 638 (1st Cir. 1996) (citing Middlesex County Ethics Comm. v. Garden State, 457 U.S. 423, 432 (1982)). Here, the three requirements are met.

The parties agree that state judicial proceedings are ongoing. The dispute over ownership of SMA Insurance Agency, Inc., began in Maine Superior Court (York County) in January 1990. Foy "was and is a party to that proceeding." Defendants' Motion to Dismiss at 3. In 1992, Robinson was appointed by the superior court to serve as receiver for SMA. The events that followed are recounted by defendants:

> A settlement agreement resolving the overall dispute was reached in April 1993, and when Foy refused to close on the agreement the dispute went to trial. The plaintiff in that underlying lawsuit, Craig O. Linscott, prevailed at trial and the decision ordering Foy to close on the Settlement Agreement was affirmed by the Maine Law Court. The Maine Superior Court thereafter granted Linscott's requested relief pursuant to M.R.Civ.P. 70 based on Foy's continued refusal to close on the Settlement Agreement. The Maine Superior Court proceeding, however, is still pending. In its Rule 70 Order, the Superior Court stated that when and if Foy signs all documents contemplated by the Settlement Agreement it intends to convene another hearing at which it will entertain a final report from its Receiver. At that final hearing, the Rule 70 Order states that "any outstanding related claims may be

9

> submitted and determined." *See* Order, June 14,
> 1995 . . . .

Defendants' Motion at 3-4 (emphasis added). In the June order,

the court also stated that it continues to retain jurisdiction to

enforce compliance, should that be necessary. It is thus clear

that the state judicial proceeding is ongoing.[2]

In addition, the proceedings presently pending in the state

court implicate an important state interest. A state has a vital

interest in a proceeding that is necessary for the "vindication

of important state policies or for the functioning of the state

judicial system . . . ." Middlesex, supra, 457 U.S. at 432. A

court-appointed receiver acts only as an officer of the court; he

may dispose of property in his custody only in compliance with an

order of the appointing court. See, e.g., Hazzard v. Westview

Golf Club, Inc., 217 A.2d 217, 223 (Me. 1966). It follows that

the appointing court has an interest in supervising the receiver

as he carries out his appointed duties and in deciding any

resulting disputes. The appointing court is also more equipped

to serve as referee. It has the benefit of past experience with

the facts and players of the case and is uniquely situated to

---

[2]Ordinarily, under Younger abstention principles, state proceedings are "ongoing" unless a party has exhausted his state appellate remedies. See Port Auth. PBA v. Port Auth. of N.Y. & N.J., 973 F.2d 169, 173 n.2 (3d Cir. 1992) (quoting Huffman v. Pursue, Ltd., 420 U.S. 592 (1975)).

interpret and amend its prior orders defining the scope of the receiver's duties. Under these circumstances, it would be disruptive, to say the least, for a federal court without such advantages to step in and interfere with the state court's supervision of the receiver. See, e.g., Howard v. Roesch, No. 93-15281, 999 F.2d 543 (Table), 1993 WL 263447, at *2 (9th Cir. July 13, 1993) (upholding abstention and noting that California had an important state interest in regulating receivership estates and the activity of its appointed receivers).

Aside from the state court's general interest in supervising its appointed receivers, the York County Superior Court has a particular interest in this matter because it has issued orders on the very subject presently at issue. Cf. Port Auth. PBA, supra note 3, 973 F.2d at 174 (finding that, under Younger, New York has an important interest in "preserving its courts' power to enforce their orders"). Review of plaintiff's second amended complaint reveals that Foy seeks either to enforce or to dissolve orders issued by the state court. As a result of the court's order to transfer all of SMA's assets and liabilities to a corporation owned by Linscott, Foy seeks "to have the [tax forms] conformed to the Maine court's decision that the money in question is not his." See Plaintiff's Objection to Motion for Summary Judgment at 13. The state court has also authorized the

11

receiver to "conclude any tax matters" relating to SMA. See Order of June 14, 1995, ¶ 3 (emphasis added) (attached to Defendants' Motion for Summary Judgment). Thus the equitable relief sought by Foy in this court would require the court to enforce and interpret the orders of the state court--functions most properly carried out by the state court. To hold otherwise would require that this court ignore Maine's interest in preserving its courts' power to enforce their own orders.

Finally, the court finds that the state court proceeding provides an adequate opportunity for the plaintiff to raise the claims asserted in his federal lawsuit. Plaintiff argues that as part of his remedy he seeks a declaration by this court that certain federal tax forms were issued erroneously, as well as an order that they be corrected by the receiver. Continuing, he states that as matters of federal taxation are within the exclusive jurisdiction of the federal government, the state court would not have jurisdiction to grant him the relief he requests. However, in addition to the Declaratory Judgment Act count, plaintiff's action asserts only that defendants have violated state common law. There is no allegation that defendants have violated any federal law or regulation, much less a law or regulation whose interpretation rests within the exclusive jurisdiction of the federal court. The plaintiff has not invoked

12

a specific provision of or a ruling or regulation issued under the Internal Revenue Code.  Indeed, if it did, this court would plainly lack jurisdiction under the tax exception of the Declaratory Judgment Act.[3]  See McCarthy v. Marshall, 723 F.2d 1034, 1036-37 (1st Cir. 1983).

A case relied upon by plaintiff, Dominion Trust Co. of Tennessee v. United States, 786 F. Supp. 1321, 1323-24 (M.D. Tenn. 1991) is not to the contrary.  That case held that a federal district court does have jurisdiction to provide declaratory relief pursuant to 28 U.S.C. § 2201, when asked to determine the parties' respective duties to file federal and state income tax returns.  Id. at 1323.  The court did not hold or discuss whether such matters rest within the exclusive jurisdiction of the federal court.  Instead, the court noted that jurisdiction is limned by a section of the Anti-Injunction Act, 26 U.S.C. § 7421, which focuses on whether the suit would have the effect of restraining the assessment or collection of any tax:

> "The jurisdictional boundaries in tax cases are drawn by the Anti-Injunction Act, 26 U.S.C. § 7421, which provides . . . that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any

---

[3]The Act specifically provides that a federal district court may grant declaratory relief in cases within its jurisdiction, "except with respect to Federal taxes . . . ."  28 U.S.C. § 2201.

> court by any person, whether or not such person is
> a person against whom such tax was assessed.'"

Dominion Trust, supra, 786 F. Supp. at 1323 (quoting McCarthy,
supra, 723 F.2d at 1037). The court then found that the
declaratory relief sought by the plaintiff would not have the
effect of preventing the IRS from assessing or collecting taxes.
Id. at 1324.

Applying these principles to the case at bar, there are two
possible outcomes. Either (1) Foy's case does not have the
effect of preventing the IRS from assessing or collecting taxes,
in which case he would have the opportunity to raise his claim in
state court, or (2) his suit would have such effect, in which
case both courts would be stripped of their jurisdiction by the
Anti-Injunction Act, 26 U.S.C. § 7421. Under outcome (1), the
state court would provide an adequate opportunity for Foy to
assert his claims advanced in federal court. Under outcome (2),
the abstention question would become moot. Accordingly, the
court finds that the third Younger abstention requirement is met
here.

For the above-stated reasons, and because the plaintiff has
not indicated that there is any bad faith, self-dealing, or other
similar epithet that can be attached to the state judicial
proceeding, see Brooks, supra, 80 F.3d at 639, the court finds

and rules that it should abstain.[4]

The next question is whether the court should dismiss the case altogether or stay the case until resolution of the state court proceedings. Neither party has relied on Quackenbush, which recently held that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." Quackenbush, supra, ___ U.S. at ___, 116 S. Ct. at 1728. Plaintiff states in his complaint that he seeks both equitable relief and damages. For the reasons stated above, the court abstains from exercising jurisdiction over, and thus dismisses,

---

[4]The court's decision is also supported under a Colorado River analysis, which entails considering the following factors:

> (1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation[;] . . . (4) the order in which the forums obtained jurisdiction[;] . . . (5) whether state or federal law controls[;] and (6) the adequacy of the state forum to protect the parties' rights.

Elmendorf Grafica, Inc. v. D.S. America (East), Inc., 48 F.3d 46, 50 (1st Cir. 1995). Here, the state court has obtained jurisdiction over the "res" in dispute here by placing the assets of SMA in the custody of a receiver. The remaining five factors similarly weigh in favor of abstention: (1) the state forum would be more convenient for most of the parties; (2) piecemeal litigation would be avoided; (3) the state court obtained jurisdiction before the federal court; (4) state law controls; and (5) the state forum is adequate to protect the parties' rights.

15

plaintiff's equitable claims, including his request for declaratory relief and an order directing the receiver to correct the tax forms.  Plaintiff's remaining damages claims are stayed pending the outcome of the state action.  See Quackenbush, supra, 116 S. Ct. at 1728 (noting that federal district courts may enter a stay when applying abstention principles to damages actions).

## 3.  Remaining Motions

Linscott has moved to intervene in this action on the ground that he has an interest in the funds in dispute.  The Federal Rules of Civil Procedure require that the court permit an applicant to intervene in an action when (1) the applicant claims an interest relating to the property in dispute and (2) the disposition of the action would impair or impede the applicant's ability to protect that interest, unless he is adequately represented by existing parties.  See Rule 24(a)(2), Fed. R. Civ. P.[5]

---

[5]Specifically, Rule 24(a)(2), Fed. R. Civ. P., provides:

> **(a) Intervention of Right.**  Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that

Foy responds that Linscott has no interest insofar as Foy seeks correction of the tax forms. But, as explained above, the court has dismissed Foy's request for correction of the tax forms. All that remains of this case is Foy's claim for the resulting damages, which may well evaporate once the state court proceedings have been resolved. Nonetheless, the possibility exists that Foy's damages action will persist. Any liabilities incurred by SMA would likely affect Linscott in that the receiver has been directed to transfer all of SMA's liabilities and assets to a corporation owned by Linscott. In such circumstances, Linscott would at least have a "relating" interest to the property here at issue.

The court has also considered the timeliness argument raised by plaintiff, as well as his other arguments concerning prejudice, but has determined that the relevant factors balance out in favor of permitting Linscott to intervene. Accordingly, the court grants Linscott's motion to intervene.

The court also grants Linscott's motion to quash a subpoena (document 71). Rule 45(c)(3)(A)(iv), Fed. R. Civ. P., provides that "the court by which a subpoena was issued shall quash or modify the subpoena if it . . . subjects a person to undue

---

interest, unless the applicant's interest is adequately represented by existing parties.

17

burden."  In light of the court's decision to dismiss plaintiff's primary claim and to stay the remainder of the case, the subpoena represents an "undue burden" on the parties.

## Conclusion

For the above-stated reasons, defendants' motion to dismiss (document 80) is granted in part and denied in part.  Count I of the second amended complaint (seeking declaratory relief against all defendants) is dismissed.  The court also grants the following motions: (1) Craig O. Linscott's Motion to Intervene (document 54) and Request for Leave to File Reply Memorandum (document 66); (2) Motion of Craig O. Linscott to Quash or Modify Subpoena (document 71); (3) motions for admission of counsel pro hac vice (documents 57, 58, 59); (4) defendants' assented-to motion on disclosure of experts (document 82); (5) defendant Robinson's Motion for Judgment on the Pleadings (document 73); and (6) Defendants' Motion to Amend Answer (document 65).

The court stays the remainder of this action (specifically, all of plaintiff's damages claims against SMA) pending the resolution of the state court proceedings.  Defendants' remaining motions need not remain active during the pendency of the stay, as no action can be taken on them.  See Local Rule 83.10.  Accordingly, the Clerk is directed to terminate the remaining

18

pending motions; namely, Defendants' Motion for Summary Judgment (document 74) and their request to file a reply (document 77). When the stay is lifted, counsel should each notify the court to specify what motions, if any, they wish to renew or refile. No action will be taken until such notification is received. Any renewed motions shall be considered refiled as of the date the stay is lifted, and any deadlines imposed by Local Rule 7 shall run from that date.

It is further ordered that counsel for the plaintiff shall file a status report on October 1 and April 1 of each year until the issues pending in the Maine state court are resolved. The court should, of course, immediately be notified upon ultimate resolution of the issues. Failure to respond may result in sanctions, which may include imposition of fines.

SO ORDERED.

 

 

_____
Shane Devine, Senior Judge
United States District Court

March 27, 1997

cc:   Gregory T. Uliasz, Esq.
      Edward A. Haffer, Esq.
      James E. Townsend, Esq.
      Sidney Thaxter, Esq.